[Cite as *Jones v. Morgan*, 2026-Ohio-3054.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARK G. JONES, | : | APPEAL NO. C-250371 |
| | | TRIAL NO. A-2500345 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| VICTORIA MORGAN, | : | *JUDGMENT ENTRY* |
| PRODIGY PROPERTIES, LLC, | : | |
| JEFFREY S. LANE, | : | |
| VALERIE B. ZUMMO, | : | |
| PAUL E. BACKSCHEIDER, | : | |
| and | : | |
| AUBREY L. BACKSCHEIDER, | : | |
| Defendants-Appellees. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgments of the trial court are affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 32% to appellant Mark G. Jones; 17% to appellee Victoria Morgan; 17% to appellees Prodigy Properties, LLC, and Jeffrey S. Lane, jointly and severally; 17% to appellee Valerie B. Zummo; and 17% to appellees Paul E. Backscheider and Aubrey L. Backscheider, jointly and severally.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**OHIO FIRST DISTRICT COURT OF APPEALS**

To the clerk:

Enter upon the journal of the court on 8/7/2026.

Pursuant to App.R. 30, the clerk is directed to serve upon all parties, or their counsel if represented, a copy of the court's judgment and note such action on the docket.

By:_____
            **Administrative Judge**

[Cite as *Jones v. Morgan*, 2026-Ohio-3054.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| MARK G. JONES, | : | APPEAL NO. C-250371 |
| | | TRIAL NO. A-2500345 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| VICTORIA MORGAN, | : | *O P I N I O N* |
| PRODIGY PROPERTIES, LLC, | : | |
| JEFFREY S. LANE, | : | |
| VALERIE B. ZUMMO, | : | |
| PAUL E. BACKSCHEIDER, | : | |
| and | : | |
| AUBREY L. BACKSCHEIDER, | : | |
| Defendants-Appellees. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 7, 2026


*Mark G. Jones*, pro se,

*Robbins Kelly Patterson & Tucker, LPA*, *Michael Galasso* and *Andrew Trice*, for Defendant-Appellee Victoria Morgan,

*Beyke Law, LLC*, *Joseph L. Beyke* and *Ryan R. Blindauer*, for Defendants-Appellees Prodigy Properties, LLC, and Jeffrey S. Lane,

*Kohnen & Patton LLP* and *Anthony J. Caruso*, for Defendant-Appellee Valerie B. Zummo,

*Manley Burke LPA*, *Timothy M. Burke* and *Ilana L. Linder*, for Defendants-Appellees Paul and Aubrey Backscheider.

**CROUSE, Presiding Judge.**

{¶1} Plaintiff-appellant Mark G. Jones has long litigated his divorce from defendant-appellee Victoria Morgan. This appeal concerns Jones's separate, civil action against Morgan (and several others involved in the divorce proceedings). The trial court dismissed Jones's claims under Civ.R. 12(B)(6), based largely on orders issued and actions taken in Jones and Morgan's prior divorce proceeding, and not on Jones's complaint itself.

{¶2} We now hold that the trial court's consideration of materials beyond the complaint was error. Jones did not allege the existence or content of the particular orders on which the trial court relied. And Jones's single reference to his divorce case number did not, as defendants contend, incorporate the entire record of his divorce proceedings into his complaint. We therefore reverse the portions of the trial court's judgments that relied upon those materials. But we affirm the dismissal of Jones's fraud claim, which he failed to allege with the requisite particularity.

## I. Background

{¶3} Jones and Morgan divorced in 2019. They then spent the next several years litigating various aspects of that divorce. In January 2025, Jones commenced the instant civil action in the General Division of the Hamilton County Court of Common Pleas. In addition to naming Morgan as a defendant, Jones's complaint also named as defendants Valerie B. Zummo, Jeffrey S. Lane, and Prodigy Properties, LLC, ("Prodigy") who had been retained to help sell Jones and Morgan's marital home ("the home"), and Paul E. Backscheider and Aubrey L. Backscheider, who had purchased that home.

{¶4} In his complaint, Jones alleged that he retained an interest in various items of personal property that he had left in the home. He alleged that the court

overseeing his divorce had appointed Zummo as receiver to sell the home. Zummo then retained Prodigy—who employed Lane and/or acted as his agent—to market the home. Per the complaint, Morgan, Zummo, Lane, and Prodigy conspired to hide from Jones the imminent sale of the home and prevent him from removing his personal property. Then, in November 2024, the home was sold to the Backscheiders, who continued to prevent Jones from recovering his personal property.

{¶5}   Jones's complaint therefore sought (1) writs of replevin to recover his allegedly detained personal property, (2) money damages for any personal property wrongfully converted by defendants, and (3) money damages based on defendants' alleged fraudulent statements and misrepresentations.

{¶6}   All six defendants filed motions to dismiss Jones's complaint pursuant to Civ.R. 12(B)(6), which the trial court granted in four separate entries.[1] Although the trial court's stated reasons varied slightly for each, they generally included (1) that Jones had abandoned any personal property left in the home; (2) that Jones sought to collaterally attack the judgment of the domestic-relations court; (3) that Jones was collaterally estopped from relitigating certain legal and factual issues; (4) that Zummo, Lane, and Prodigy had been appointed as receivers by the domestic-relations court and were therefore immune from suit without that court's leave; and (5) that Jones had failed to plead his fraud claims with particularity.

## II. Analysis

{¶7}   Jones's sole assignment of error challenges the trial court's dismissal of his complaint for failing to state a claim upon which relief may be granted, pursuant

---

[1] Prodigy and Lane filed a joint motion to dismiss, so the trial court disposed of the claims against them in a single entry. The Backscheiders did likewise, so they, too, received a single entry. Zummo and Morgan received separate entries.

to Civ.R. 12(B)(6). We review Civ.R. 12(B)(6) dismissals de novo. *Vandemark v. Reder*, 2026-Ohio-50, ¶ 12 (1st Dist.).

**{¶8}** A motion to dismiss pursuant to Civ.R. 12(B)(6) is procedural; it tests merely "the sufficiency of the complaint and the materials incorporated into it." *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-3990, ¶ 16. Generally, a complaint is sufficient if its contents (1) show that what the plaintiff intends to prove would entitle him to judicial relief, and (2) give the defendant "fair notice of the claim and an opportunity to prepare his response." (Cleaned up.) *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13; *accord Vandemark* at ¶ 10. Neither goal requires the plaintiff to "prove his . . . case at the pleading stage." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991); *accord Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 8. Rather, it is enough that the complaint informs the defendants of the basis for their alleged liability and is consistent with some set of facts that would permit recovery. *York* at 145; *Doe* at ¶ 8; *Vandemark* at ¶ 10. The rules provide an exception to this lenient standard for allegations of fraud, the circumstances of which must be alleged with "particularity." Civ.R. 9(B); *accord Vandemark* at ¶ 11.

**{¶9}** We begin by addressing the dismissal of Jones's fraud claims, before turning to his claims for conversion and replevin, and, finally, Zummo's alternative basis for affirmance.

### A. Fraud Claims

#### 1. Failure to Plead with Particularity

**{¶10}** To prove his fraud claim, Jones had to show "(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the

representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance." *Fed. Natl. Mtge. Assn. v. Hirschhaut*, 2019-Ohio-3636, ¶ 30 (1st Dist.); *accord Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 61. And to allege his claim with the "particularity" required by Civ.R. 9(B), he needed to include "the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence of the fraud." *Meehan v. Mardis*, 2019-Ohio-4075, ¶ 20 (1st Dist.).

{¶11} But Jones's complaint includes no allegation of an affirmative false representation. Instead, he contends that his fraud claim was based on what defendants *didn't* tell him. Nondisclosure can be the basis of a fraud claim, but only "where there exists a duty to speak." *Layman v. Binns*, 35 Ohio St.3d 176, 178 (1988). Without such a duty, even material nondisclosures do not constitute fraud. *Applegate v. Fund for Constitutional Govt.*, 70 Ohio App.3d 813, 819 (10th Dist. 1990).

{¶12} Jones's fraudulent-nondisclosure theory fails, because Jones can point to no common-law, statutory, or equitable duty that required defendants to speak. Jones suggests that his divorce decree required Morgan "to notify Jones if she intended to unlawfully interfere with Jones's previously-accomplished control of his Property." But even assuming this is true, the remedy for violations of a divorce decree is contempt; Jones offers no authority to suggest he can enforce the decree through a separate fraud action. *Compare Lelak v. Lelak*, 2022-Ohio-3458, ¶ 47 (2d Dist.) (noting that divorce decree "did not impose a fiduciary duty" and that "the proper remedy for failure to abide by the decree was a contempt action").

8

### 2. *Dismissal with Prejudice*

**{¶13}** Jones contends, however, that even if his fraud claims were deficient, the trial court still erred by dismissing them with prejudice, rather than permitting Jones to refile or amend them.

**{¶14}** At the time the trial court dismissed his claims, Jones was not entitled to amend his complaint as of right. *See* Civ.R. 15(A) (plaintiff can amend as of right within 28 days "after service of a responsive pleading or . . . a motion under Civ.R. 12(B), (E), or (F), whichever is earlier"). Jones did not file a motion for leave to amend his complaint; he merely sought it in his memorandum opposing defendants' motions to dismiss. Nor did he include a proposed amended complaint with that memorandum or explain how any potential amendment might salvage his claims. The trial court did not abuse its discretion in denying his request. *Compare Kromer v. Arthritis Found., Inc.*, 2025-Ohio-661, ¶ 27-28, 30 (10th Dist.).

**{¶15}** Nor did the trial court abuse its discretion in dismissing Jones's fraud claims with prejudice, rather than without. A Civ.R. 12(B)(6) dismissal should be with prejudice if the dismissed claim "cannot be pleaded in any other way." *Fletcher v. Univ. Hosps. of Cleveland*, 2008-Ohio-5379, ¶ 17. But Jones's omission of any alleged misrepresentation or duty to disclose suggests a *substantive defect* in his claim, not a mere technical defect of pleading. And Jones offered the trial court no reason to believe otherwise.

**{¶16}** We therefore hold that Jones's complaint failed to state claims against defendants for fraud. The trial court did not err in dismissing those claims pursuant to Civ.R. 12(B)(6) and did not abuse its discretion by dismissing them with prejudice.

### B. *Replevin & Conversion Claims*

**{¶17}** We next turn to the trial court's dismissal of Jones's claims for replevin

and conversion based on the affirmative defenses of abandonment, collateral estoppel, the collateral-attack bar, and receivership immunity. We begin, however, by considering the legal standards for considering such defenses at the pleading stage.

*1. Civ.R. 12(B)(6) & Affirmative Defenses*

**{¶18}** Ordinarily, affirmative defenses must be raised in a defendant's answer. Civ.R. 8(C). Thus, they are generally not a basis for dismissal under Civ.R. 12(B)(6), which considers only the sufficiency of the *complaint*, and may be filed *before* the answer. *See State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109 (1991).

**{¶19}** Sometimes, however, a plaintiff's "complaint and the materials incorporated into it show conclusively that [an affirmative] defense applies." *State ex rel. Nguyen v. Lawson*, 2025-Ohio-507, ¶ 20. In such cases, parties can litigate their affirmative defenses, without venturing beyond the four corners of the complaint. *Id.*; *Schmitz v. Natl. Collegiate Athletic Assn.*, 2018-Ohio-4391, ¶ 11. But a plaintiff is not required to anticipate and plead around affirmative defenses, so a court should dismiss a complaint based on an affirmative defense only if the complaint obviously and conclusively establishes that the defense will bar the claim. *Glick Mgt., L.L.C. v. Cincinnati*, 2025-Ohio-2572, ¶ 14 (1st Dist.).

*2. Collateral Estoppel*

**{¶20}** Collateral estoppel provided one of the primary grounds for the trial court's dismissal. Collateral estoppel, or issue preclusion, is part of the doctrine of res judicata. *See Lycan v. Cleveland*, 2022-Ohio-4676, ¶ 22. It is an affirmative defense that precludes (i.e., estops) a party from relitigating a particular issue that was finally and conclusively resolved in a prior action. In this case, the trial court reasoned that orders entered by the domestic-relations court collaterally estopped Jones from relitigating his title to items left in the home.

**{¶21}** Because "res judicata is an affirmative defense," we have long held that "it must be set forth in the answer to a pleading and is properly raised in a summary-judgment motion"—*not* in "a motion to dismiss under Civ.R. 12(B)." *State ex rel. Felson v. McHenry*, 2001-Ohio-4265, ¶ 3 (1st Dist.); *accord, e.g., Five Star Fin. Corp. v. Merchant's Bank & Trust Co.*, 2011-Ohio-314, ¶ 18 (1st Dist.); *Ora v. Fitness Internatl.*, 2021-Ohio-2824, ¶ 6 (1st Dist.). The rule is not ours; it has long been a fixture at the Ohio Supreme Court. *See, e.g., Freeman,* 62 Ohio St.3d at 109 ("the defense of res judicata may not be raised by motion to dismiss under Civ.R. 12(B)"); *Sharper v. Tracy*, 1995-Ohio-37, ¶ 3-5 (applying *Freeman* to collateral estoppel); *State ex rel. Green v. Wetzel*, 2019-Ohio-4228, ¶ 6. "When the res judicata defense depends on documents outside the pleadings, the proper procedure is for the court to convert the motion to dismiss into a motion for summary judgment and provide the opposing party with notice and an opportunity to respond," as set forth in Civ.R. 12(B). *Jefferson v. Bunting*, 2014-Ohio-3074, ¶ 12; *accord Ora* at ¶ 6-7.

**{¶22}** Like other affirmative defenses, however, res judicata may provide a basis for dismissal where the complaint and any incorporated materials "show conclusively that the defense applies." *Nguyen*, 2025-Ohio-507, at ¶ 20.

**{¶23}** Although the parties seem to accept these general principles, they differ on what materials were incorporated into Jones's complaint. The allegations themselves do not obviously or conclusively show that prior orders of the domestic-relations court fully and finally resolved Jones's rights in the property in the home. They do, however, include a single reference to the case number of Jones's divorce proceedings. Defendants contend that this citation effectively incorporated into Jones's complaint the entire record of his domestic-relations proceedings. Thus, defendants say that the trial court and this court may supplement Jones's complaint

with the contents of every order and filing from that publicly available docket.

**{¶24}** Defendants cite *State ex rel. Peoples v. Schneider*, 2020-Ohio-1071, as support for their broad theory of incorporation and judicial notice at the pleading stage. We do not read *Peoples* so broadly.

**{¶25}** *Peoples*'s primary holding concerned only claims that expressly challenge the validity of a prior judgment. In *Peoples*, the complaint assailed the finality of the judgment that had imposed the plaintiff's criminal sentence. *Peoples* at ¶ 4-5. The lower court dismissed the complaint on res judicata grounds, and the Ohio Supreme Court affirmed. In its view, the plaintiff's allegations regarding his criminal judgment had permitted the lower court to consider that judgment, determine it was final, and hold that the defendant had been required "to raise his final-appealable-order claim on direct appeal from his conviction." *Id.* at ¶ 9. Because the case at issue was not that direct appeal, the Court concluded that the plaintiff's claims were res judicata.

**{¶26}** The Court's holding in *Peoples* did not rely upon any broad theory of incorporation by reference. Instead, it simply held that, by citing the particular judgment he sought to attack, the plaintiff had incorporated that judgment into his complaint. The trial court was thus implicitly permitted to take judicial notice of that judgment's contents (assuming it was publicly available) and read them into the plaintiff's complaint wholesale.

**{¶27}** The trial court's collateral-estoppel dismissal in this case, however, required much more. Jones's complaint does not specifically incorporate or even cite the particular judgments that allegedly estopped Jones from relitigating elements of his claims. Nor does Jones's complaint, by its terms, attack the validity of the domestic-relations court's prior judgment. Rather, the complaint makes only a passing

reference to the domestic-relations case number generally.

{¶28} Defendants' theories of incorporation appear to rest on the *Peoples* Court's *alternative* rationales. After reaching its holding, the *Peoples* Court cited decisions in the plaintiff's other appeals and writ actions as *additional* grounds for a res-judicata dismissal. *See Peoples*, 2020-Ohio-1071, at ¶ 9. Arguably, these statements were dicta, as the Court had already determined that dismissal was proper on less expansive grounds, and had no need to consider *other* judgments that the plaintiff had not explicitly cited.

{¶29} But even the alternative rationales offered in *Peoples* cannot support the weight defendants would have them bear. Under defendants' maximalist theory of incorporation by reference, every time a complaint cites another court proceeding, a trial court becomes obligated to read *each and every publicly-available filing* from that proceeding into that complaint, just as if its contents had been copied and pasted in an endless procession of block quotes. Such a requirement would create an end-run around the straightforward rule laid down in *Freeman*, 62 Ohio St.3d 107, and *Jefferson*, 2014-Ohio-3074, that res-judicata can provide a basis for dismissal only where the complaint itself shows the defense applied. But *Peoples* did not replace *Freeman* and *Jefferson*'s clean rule about pleading sufficiency with an open-ended invitation to hunt through other courts' online dockets and treat whatever you find there as the plaintiff's own allegations. Just four years after *Peoples*, the Court reiterated its straightforward *Freeman/Jefferson* rule in *State ex rel. White v. Aveni*, 2024-Ohio-1614, ¶ 22.

{¶30} Instead, we view *Peoples*'s alternative rationales as suggesting, at most, a narrow exception to the *Freeman/Jefferson* rule. That portion of the Court's opinion considered several *published decisions* in actions appealing or collaterally attacking

the *judgment identified in the plaintiff's complaint*. And the Court considered these extrinsic writings with respect to a *claim-preclusion* defense.

**{¶31}** The instant case was not cut from this same mold. Here, defendants raise issue preclusion, rather than the much less fact-bound defense of claim-preclusion at issue in *Peoples*. And they ask us to resolve that issue-preclusion question based not on self-sufficient published decisions arising out of the domestic-relations case, but on a series of judgments intended for the parties and available only on the trial court's online docket.

**{¶32}** Further, it is not obvious that the rule in *Peoples* was meant to apply outside the context of original or extraordinary writs. Extraordinary-writ cases often *require* courts to consider the propriety of other courts' actions and involve unique substantive and procedural rules. *Compare State ex rel. Bradford v. Palmer*, 2024-Ohio-4929, ¶ 13-15 (permitting judicial notice of prior habeas decisions to dismiss petition based on second-or-successive-petition rule). It is not clear that any license to go beyond normal principles of incorporation would extend to an ordinary civil action like Jones's.

**{¶33}** We therefore hold that the trial court erred in granting defendants' motions to dismiss on the basis of collateral estoppel.

**{¶34}** Morgan, however, argues that policy cuts the other way. She argues that the finality objectives of the doctrine of res judicata would be "undermined if a defeated litigant, dissatisfied with the results of the initial action, could repackage his claims in a new lawsuit and force the previously prevailing parties to engage in discovery and proceed all the way to summary judgment, by simply not incorporating the decisions or orders from the prior action."

**{¶35}** The rules already provide mechanisms to avoid such abuse. Discovery

need not be completed before a motion for summary judgment is filed. *See FIG 20, L.L.C. v. Daczko*, 2026-Ohio-602, ¶ 11 (11th Dist.). We have held that a trial court has discretion to determine whether to rule on such a motion or delay it until after discovery. *Travis v. Tall Tall Properties, L.L.C.*, 2023-Ohio-3370, ¶ 22 (1st Dist.). In fact, Civ.R. 12(B) *anticipates* such prediscovery summary judgments and allows courts to convert pre-answer Civ.R. 12(B)(6) motions into motions for summary judgment. Preclusion defenses, which will sometimes benefit little from discovery, may offer one basis for summary judgment at such an early stage.

{¶36} In this case defendants relied upon judgments outside Jones's complaint to justify dismissal based on collateral estoppel. Under Civ.R. 12(B), the "proper procedure" for a trial court confronted with such extrinsic evidence would be either to disregard it, or else "to convert the motion to dismiss into a motion for summary judgment and provide the opposing party with notice and an opportunity to respond" with contrary evidence. *Jefferson*, 2014-Ohio-3074, at ¶ 12; *accord Ora*, 2021-Ohio-2824, at ¶ 6-7 (1st Dist.).

{¶37} But because the court below did not convert defendants' motions to dismiss into motions for summary judgment, it neither developed a proper summary-judgment record nor applied Civ.R. 56's well-worn framework for assessing evidentiary sufficiency. It simply treated materials not provided by Jones as allegations in his complaint. This was error.

### 3. Collateral-Attack Doctrine

{¶38} The trial court also ruled that Jones's complaint constituted an impermissible collateral attack upon the judgment of the domestic-relations court. A collateral attack on a judgment is "an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment."

15

(Cleaned up.) *State v. Bethel*, 2022-Ohio-783, ¶ 44. In general, the law disfavors or prohibits such collateral attacks, unless the initial judgment was entered without jurisdiction. *See Tari v. State*, 117 Ohio St. 481, 494 (1927). This rule is distinct from, but related to, the doctrine of res judicata. *See Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 22.

**{¶39}** The face of Jones's complaint did not allege a contrary judgment. Thus, the trial court's collateral-attack rationale suffers from the same defect as its collateral-estoppel ruling. Because proof of a collateral attack requires proof of a contrary judgment, and because such a judgment was neither alleged by nor incorporated into Jones's complaint, the collateral-attack doctrine was an improper basis for dismissal under Civ.R. 12(B)(6).

### 4. *Abandonment*

**{¶40}** The trial court further held that Jones's claims for replevin and conversion failed because Jones had abandoned the personal property at issue. Abandonment would be an affirmative defense to Jones's conversion claim. *Boaeuf v. Memphis Station, L.L.C.*, 2018-Ohio-745, ¶ 6 (8th Dist.). And because abandonment would extinguish Jones's rights in the property, it would undermine his replevin claim, too. *See Peterson v. Booth*, 2023-Ohio-1301, ¶ 14-17 (2d Dist.).

**{¶41}** Nothing in Jones's complaint established that he abandoned his property. To the contrary: Jones alleges that he did not "seek, determine, or deem any item or element of the Property to be abandoned."

**{¶42}** The court below rested its abandonment rationale on an order from the domestic-relations court deeming any personal property left in the home to have been abandoned by operation of law. But this is simply an argument that Jones's claims run contrary to a prior court order—an order never alleged in Jones's complaint. In other

words, the trial court's abandonment rationale is identical to the collateral-estoppel and collateral-attack rationales we have already rejected. All rely on prior orders that were not incorporated into Jones's complaint, so all fail. Defendants may have incontrovertible evidence of abandonment, but such *extrinsic* evidence tells us nothing about the sufficiency of Jones's complaint. And sufficiency is all that matters under Civ.R. 12(B)(6). *See Ames*, 2022-Ohio-3990, at ¶ 16.

### 5. Receivers' Immunity

**{¶43}** Finally, the trial court held that the claims against Zummo, Lane, and Prodigy were barred by virtue of their status as receivers.

**{¶44}** "Receivers are officers of the court, appointed in equity to manage, preserve, and sometimes dispose of property in controversy during litigation." *Morgan v. Jones*, 2026-Ohio-2432, ¶ 29 (1st Dist.). A receiver can be sued in either their individual or official capacities for actions related to their receivership. *INF Ent., Inc. v. Donnellon*, 133 Ohio App.3d 787, 789 (1st Dist. 1999).

**{¶45}** Official-capacity suits seek recovery against assets in receivership. *Id.* at 789, quoting *Murphy v. Hollbrook*, 20 Ohio St. 137, 143 (1870). While the receivership continues, an official-capacity suit requires either leave of the court that appointed the receiver or express statutory authority. 80 Ohio Jur.3d, Receivers, § 226 (2026); *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 23 (1st Dist.); *Roberts v. Jackass Flats, L.L.C.*, 2016-Ohio-610, ¶ 15 (2d Dist.). But once a receiver is discharged and the receivership is terminated, official-capacity claims against the receiver are necessarily extinguished. *See Morgan* at ¶ 37 (collecting authorities to this effect); *Madorsky v. Suburban Homes Co.*, 45 Ohio App. 83, 85-86 (8th Dist. 1933).

**{¶46}** Individual-capacity claims, by contrast, seek recovery against a receiver for the receiver's own misconduct or negligence. *See INF* at 789; *Koeblitz v. Koeblitz*,

17

2021-Ohio-2269, ¶ 24 (8th Dist.). Several courts in Ohio have held that such claims, like official-capacity claims, require leave of the appointing court. *See Ettayem v. Ramsey*, 2019-Ohio-675, ¶ 15-16 (10th Dist.); *PNC Bank, N.A. v. Kidz Real Estate Group, L.L.C.*, 2013-Ohio-1357, ¶ 6 (6th Dist.). Because individual-capacity claims seek recovery against the receiver's personal funds (rather than against the assets in receivership), they survive the receiver's discharge and the termination of the receivership. And because a receiver's final discharge generally terminates an appointing court's summary jurisdiction over its receiver, *see Madorsky* at 85-86, a plaintiff may no longer need leave to file an individual-capacity suit.

**{¶47}** The terms of a particular discharge order may alter the ability to bring individual-capacity claims, however. For example, a discharge order might provide that the appointing court retains jurisdiction to grant or deny leave, or might include findings that effectively estop parties from relitigating certain aspects of the receiver's conduct. *See*, *e.g.*, *Fontain* at ¶ 24, 28. Such ongoing provisions are "in the nature of an injunction, tailored to ensure the parties [can]not undo the receiver's work." *Morgan*, 2026-Ohio-2432, at ¶ 62 (1st Dist.).

**{¶48}** In this case, Jones's complaint never alleged that either Lane or Prodigy were appointed as receivers. Nor did it incorporate any orders regarding their appointment. Thus, the complaint did not plainly and conclusively show that either was shielded from suit.

**{¶49}** Jones *did* allege, however, that "Zummo was appointed on or about April 2021 by the Hamilton County Court of Common Pleas, Division of Domestic Relations . . . , to serve as a receiver with the directive of effectuating the sale of the Residence pursuant to a September 19, 2019 Decree of Divorce." This allegation was sufficient to show conclusively that, to the extent Jones sought recovery against

18

Zummo in her *official capacity*, his claims were barred. Jones did not allege he received leave to sue Zummo. Thus, if she was still the receiver when Jones filed his complaint, his claim fails. And if Zummo was already discharged as receiver, then all official-capacity claims against her were extinguished.

**{¶50}** However, Jones's complaint did not plainly and conclusively establish Jones was barred from suing Zummo in her *personal capacity.* If Zummo's receivership was ongoing, then Jones did not allege that he obtained the requisite leave to sue her. But if Zummo had been discharged, then she could be sued—absent a term in her discharge order to the contrary. Because Jones does not allege the existence or contents of such a discharge order, there remains a set of facts consistent with the complaint under which Zummo may be sued.

### C. Zummo's Jurisdictional Argument

**{¶51}** Zummo makes one final argument, not resolved by the court below. In her brief, she argues that the General Division of the Hamilton County Court of Common Pleas lacked subject-matter jurisdiction over Jones's complaint, because the case was committed by statute to the Domestic-Relations Division. Although she characterizes this as an alternative ground for affirmance, we note that jurisdictional dismissals are always *without prejudice. See* Civ.R. 41(B)(4); *Love v. Hamilton Cty. Job & Family Servs.*, 2025-Ohio-2498, ¶ 27 (1st Dist.). Thus, if Zummo were correct, we would need to modify the trial court's judgment before affirming it.

**{¶52}** But Zummo's jurisdictional justification fails. R.C. 2301.03(B)(2) provides that the judges "elected and designated as judges of the court of common pleas, division of domestic relations, . . . shall have assigned to them all divorce, dissolution of marriage, legal separation, and annulment cases coming before the court." We have previously said that this provision grants the domestic-relations

19

division exclusive jurisdiction over the listed cases "and deprives the court's other divisions, including the general division, of jurisdiction over the same matters." (Cleaned up.) *Tabbosha v. Abdelrehim*, 2025-Ohio-3133, ¶ 24 (1st Dist.). But this is a case in replevin, conversion, and fraud—not a "divorce, dissolution of marriage, legal separation, or annulment case[]." And Jones seeks damages and replevin, not simply an annulment by another name, as the declaratory judgment sought in *Tabbosha* was. *See id.* at ¶ 33.

{¶53} The General Division of the Hamilton County Court of Common Pleas thus had subject-matter jurisdiction over Jones's complaint.

### III. Conclusion

{¶54} The trial court properly dismissed Jones's fraud claims for failure to state a claim under Civ.R. 12(B)(6). However, the trial court's rationales for dismissing Jones's other claims all relied upon matter far beyond the four corners of Jones's complaint. While defendants may have strong evidence to prove their affirmative defenses, Jones did not incorporate that evidence into his complaint. It was therefore beyond the scope of defendants' Civ.R. 12(B)(6) motions. If the trial court wished to consider those materials, Civ.R. 12(B) required it to convert defendants' motions into motions for summary judgment and give Jones the chance to introduce contrary evidence.

{¶55} Accordingly, we sustain Jones's assignment of error in part and overrule it in part. The trial court's dismissals of Jones's fraud claims are affirmed. Its dismissals of Jones's other claims are reversed. The cause is remanded to the trial court for further proceedings consistent with the law and this opinion.

*Judgments affirmed in part, reversed in part, and cause remanded.*

**BOCK** and **NESTOR**, JJ., concur.